UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FAUS SIGNATURE HOSPITALITY LLC, et al.,

Plaintiffs,

v.

MARKWAYNE MULLIN,[1] et al.,

Defendants.

Case No. 26-cv-00573-NW

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: ECF Nos. 27, 32

Plaintiff Faus Signature Hospitality LLC ("FSH") is a hospitality company established in Miami, Florida in February 2025. ECF No. 1 ¶ 1. Plaintiff Ricard Faus Rodriguez ("Mr. Faus") is a native and citizen of Spain who has been offered[2] full-time employment by FSH as its Chief Operating Officer, overseeing the operations of FSH's hospitality business. *Id.* ¶¶ 1–2, 23. On July 28, 2025, FSH filed a Form I-129 Petition for a Nonimmigrant Worker, seeking O-1A classification for Mr. Faus based on his "extraordinary ability in … business." ECF No. 28 (the Certified Administrative Record, ("CAR")) at 487–505;[3] *see also* ECF No. 1 ¶ 24. Defendants Joseph B. Edlow (Director of United States Citizenship and Immigration Services ("UCSIS")),

[1] Markwayne Mullin was confirmed as Secretary of Homeland Security on March 24, 2026, after the termination of the former secretary, Kristi Noem. Pursuant to Fed. R. Civ. P. 25(d), Mullin was "automatically substituted as a party" as Noem's successor.

[2] According to FSH's operating agreement, FSH is an LLC with only two members. CAR 560–87. Although Mr. Faus is not the managing member, he contributed 99.9% of the initial capital and is entitled to 99% of the net profits of FSH. CAR 568. So in a practical sense, Mr. Faus has offered himself this employment. But this fact did not appear to affect USCIS's decision, and it therefore does not alter the Court's analysis.

[3] Unless otherwise noted, record citations are to the Electronic Case File ("ECF") and pinpoint citations are to the ECF-generated page numbers at the top of documents. For documents in the CAR, citations are to the CAR with pinpoint citations to the CAR page number.

Connie Nolan (Associate Director for the USCIS Service Center Operations), and the Secretary of Homeland Security denied that petition. ECF No. 1 ¶ 33. Plaintiffs allege that Defendants' denial was arbitrary, capricious, and contrary to law under the Administrative Procedure Act ("APA"). *Id.* ¶¶ 53–57. The Court held a hearing in this matter on October 30, 2026. ECF No. 46. Plaintiffs did not appear, and Defendants agreed to submit the matter on the papers. *See id.*

As explained below and as shown by the evidence considered by USCIS, notwithstanding Mr. Faus's significant business experience, Plaintiffs did not show that he "has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim[.]" 8 U.S.C. § 1101(a)(15)(O)(i). Specifically, the Court finds that Defendants' decision must be upheld as to all but two of the eight O-1A criteria considered by USCIS at step one of the analysis. And because step one requires Plaintiffs to meet at least three of the eight criteria to qualify for an O-1A visa, whatever errors USCIS made as to those two criteria are harmless. The Court accordingly AFFIRMS the decision of USCIS and enters summary judgment for Defendants and against Plaintiffs.

## I. STATUTORY FRAMEWORK AND FACTUAL[4] BACKGROUND

Section 101(a)(15)(O)(i) of the Immigration and Nationality Act ("INA") allows individuals with "extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim . . . ." to be granted visas to apply for admission into the United States and work in their respective field. 8 U.S.C. § 1101(a)(15)(O)(i); 8 C.F.R. § 214.2(o)(1)(i). In the "fields of science, education, business, or athletics," there are two ways an individual may "demonstrate sustained national or international acclaim:" by providing evidence of either "(A) Receipt of a major, internationally recognized award, such as the Nobel Prize" or

> (B) At least three of the following forms of documentation:
>
> (1) Documentation of the alien's receipt of nationally or internationally recognized prizes or awards for

[4] The facts herein are drawn from the CAR. *See Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010) ("Generally, judicial review of an agency decision is limited to the administrative record on which the agency based the challenged decision.").

excellence in the field of endeavor;

(2) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

(3) Published material in professional or major trade publications or major media about the alien, relating to the alien's work in the field for which classification is sought, which shall include the title, date, and author of such published material, and any necessary translation;

(4) Evidence of the alien's participation on a panel, or individually, as a judge of the work of others in the same or in an allied field of specialization to that for which classification is sought;

(5) Evidence of the alien's original scientific, scholarly, or business-related contributions of major significance in the field;

(6) Evidence of the alien's authorship of scholarly articles in the field, in professional journals, or other major media;

(7) Evidence that the alien has been employed in a critical or essential capacity for organizations and establishments that have a distinguished reputation;

(8) Evidence that the alien has either commanded a high salary or will command a high salary or other remuneration for services, evidenced by contracts or other reliable evidence.

8 C.F.R. § 214.2(o)(3)(iii).

Making either the "major, international award" showing or the "three of eight criteria" showing is the threshold step; if the applicant makes this showing, USCIS must then determine whether, in light of the totality of the circumstances, the applicant "is one of the small percentage who have arisen to the very top of the field of endeavor." 8 C.F.R. § 214.2(o)(3)(ii); *see also* *Kazarian v. U.S. Citizenship & Immigr. Servs.*, 596 F.3d 1115, 1119 (9th Cir. 2010).[5]

[5] As the Ninth Circuit has explained, under this framework, "'*[e]xtraordinary* ability' is distinct from '*exceptional* ability,' however, which receives second preference. Skilled workers, professionals, and 'other workers' make up the third preference." *Kazarian*, 596 F.3d at 1120 (internal citations omitted) (footnote included).

Plaintiffs filed their O-1A application on July 28, 2025. In support of their petition, Plaintiffs submitted an "attorney support letter" (functionally, a brief) explaining and attaching the following documents:

- FSH's electronic articles of organization as a Florida LLC (CAR 560–87);
- The employment agreement for Mr. Faus to work at FSH from September 4, 2025, to September 3, 2028, at a salary of $60,000 per year (CAR 588–93);
- A letter of support from the managing partner of FSH (CAR 594–95);
- An "itinerary" for Mr. Faus's planned employment with FSH (CAR 596–602);
- An advisory letter from an "expert" restaurant manager and bartender in the San Jose area, evaluating "the professional qualifications" of Mr. Faus in relation to the standards for "extraordinary ability" in the field of hospitality (CAR 603–13);
- Mr. Faus's February 2025 award from "Global Recognition Awards," as well as various articles covering the reach of Global Recognition Awards (CAR 614–44);
- Several articles either about or quoting Mr. Faus, published in *Resident Magazine*, *Naluda Magazine*, and *Small Business Sense*, as well as certain analytics for these magazines (CAR 645–703);
- A profile, article, certificate, and participation letter related to Mr. Faus serving as a Judge on the Global Recognition Awards' "Sustainability & Environmental Innovation Judging Panel" in 2025 (CAR 704–44);
- Four scholarly articles by Mr. Faus: his Master's Thesis at the University of Seville in Spain, his "final degree project" at the University of Wales, an article he authored and published in *Brainz Magazine*, and an article he authored that was accepted and approved for publication in *Revista FT* (CAR 745–840);
- Documents reflecting Mr. Faus's roles as "Food and Beverage Manager" at Baraza Resort & Spa (Zanzibar, Tanzania) and "Floor Manager" at Teleferic Barcelona in California, including the salaries he received in these roles (CAR 841–930); and
- Mr. Faus's resume and education summary (CAR 931–39).

*See* CAR 518–20 (index of initial exhibits).

United States District Court
Northern District of California

On August 6, 2025, Defendants issued a request for evidence ("RFE"), finding Plaintiffs' applications and supporting documents insufficient to support his O-1A application. CAR 33–43. In response to deficiencies raised by USCIS, Plaintiffs further submitted:

- Documents intended to show that FSH is a developing business (CAR 124–73);
- A new advisory opinion, from an expert with post-graduate training and over 20 years' experience in the hospitality industry (CAR 174–81);
- Additional evidence that Global Recognition Awards is recognized internationally and is competitive (CAR 189–238);
- Additional statistics about the circulation and readership statistics of *Resident Magazine*, *Naluda Magazine*, *Small Business Sense*, and another article published in *Haute & Her* about Mr. Faus (CAR 239–98);
- A follow-up document showing that Mr. Faus's article in *Revista FT* was actually published, along with information about the *Revista FT* and *Brainz Magazine* publications (CAR 310–51);
- Additional documents about Mr. Faus's positions at Baraza Resort & Spa in Tanzania, *Teleferic Barcelona* in California, and the *Mandarin Oriental* in Barcelona, Spain (CAR 352–465); and
- An article on the differences between a CEO and a COO (CAR 465–79).

*See* CAR 70–71 (index of RFE exhibits). After considering the evidence, on November 18, 2025, USCIS issued a twelve-page decision denying Plaintiffs' petition and explaining the reasons for denial. CAR 1–12. In sum, USCIS found that Plaintiffs had not "demonstrate[d] sustained national or international acclaim" under 8 C.F.R. § 214.2(o)(3)(iii) because Plaintiffs failed to satisfy neither evidentiary option: they submitted no evidence of "a Nobel Prize or comparable major, internationally recognized award" (the first evidentiary option), and did not establish Mr. Faus's eligibility for an O-1A visa via at least three of the eight O-1A criteria (the second option).

On March 26, 2026, following proceedings on a temporary restraining order and preliminary injunction in this matter, the parties stipulated to a dispositive briefing schedule to resolve this matter on cross-motions for summary judgment. *See* ECF No. 24.

## II. LEGAL STANDARD

Review under the APA requires a Court to set aside "the underlying agency action . . . only if 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Kazarian*, 596 F.3d at 1118 (quoting 5 U.S.C. § 706(2)(A)). Arbitrary and capricious review asks whether the agency "has articulated a rational relationship between its factual findings and its decision[.]" *Fence Creek Cattle Co.*, 602 F.3d at 1132. An agency decision is an abuse of discretion or contrary to law "if there is no evidence to support the decision or if the decision was based on an improper understanding of the law." *Kazarian*, 596 F.3d at 1118. As to arbitrary and capricious review and abuse of discretion, the "standard is narrow and a court is not to substitute its judgment for that of the agency." *See Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

But as Plaintiffs argue, the question of statutory interpretation (and, so, whether the agency's decision is contrary to law) "is a role that is reserved for the courts." *See Centro de Trabajadores Unidos v. Bessent*, 167 F.4th 1218, 1237–38 (D.C. Cir. 2026) (explaining how *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) changed the landscape in APA cases). "[I]n an agency case as in any other, there is a best reading" of the statute, and "courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright*, 603 U.S. at 401, 413. Defendants do not contest this but point out that USCIS is still "entitled to a measure of deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)." ECF No. 32 at 19. Under *Skidmore* deference, "[t]he weight of [an agency's] judgment in a particular case, . . . depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Loper Bright*, 603 U.S. at 388 (quoting *Skidmore*, 323 U.S. at 140).

## III. DISCUSSION

The Court begins by rejecting two general arguments made by the parties. The Court then addresses UCSIS's decision under each of the eight O-1A criteria in turn.

**A. USCIS Properly Applied the Preponderance of the Evidence Standard**

First, Plaintiffs' argument that USCIS failed to apply the "preponderance of the evidence" standard required in O-1A determinations is unpersuasive. *See Matter of Chawathe*, 2010 WL 4144591, at *6 (setting forth preponderance of the evidence standard). USCIS's decision denying Plaintiffs' O-1A petition explains that, in accordance with *Matter of Chawathe*, USCIS "examined the evidence of record for relevance, probative value, and credibility" under the "preponderance of the evidence" standard. CAR 3. Plaintiffs' statutory-misinterpretation arguments aside, they "do[] not cite, and the court has not found, any specific language or analysis in [the agency's] decision implying that [it] deviated from the 'preponderance of the evidence' standard" at any point. *See Binbin Lei v. United States Citizenship & Immigr. Servs.*, No. 15-cv-9654-FMO (PJWx), 2017 WL 5957641, at *4 (C.D. Cal. Mar. 23, 2017), *aff'd*, 740 F. App'x 578 (9th Cir. 2018).

**B. Defendants "Harmless Error" Argument Under Step Two is Unpersuasive**

Second, even "where an agency errs, [the Court] may evaluate whether such an error was harmless." *Kazarian*, 596 F.3d at 1118. Defendants argue that, even if USCIS erred during the threshold-evidentiary determination under the eight O-1A criteria, the error was harmless because "it is clear from [USCIS's] decision that [it] would have ultimately found" Plaintiffs failed to show that Mr. Faus is "one of the small percentage who have arisen to the very top of his field of endeavor" in light of "the 'totality of the evidence' requirement in step two of the analysis." ECF No. 32 at 20. But Plaintiffs are correct that this "merits defense consists of rationales the agency itself never adopted"; to the contrary, USCIS's decision was explicit that it did not reach step two:

> Upon review, USCIS finds that the beneficiary has not received a major, internationally recognized award and has not satisfied at least three of the eight criteria. Because you have not established by a preponderance of the evidence that the beneficiary has satisfied the initial evidentiary requirement, **it is not necessary to analyze the totality of the evidence to determine** whether the beneficiary has reached a level of expertise indicating that the beneficiary is one of that small percentage who have risen to the very top of the field of endeavor and whether the beneficiary has sustained acclaim.

CAR 11 (emphasis added). "In the context of agency review, the role of harmless error is constrained." *Kazarian*, 596 F.3d at 1118. The Court must "judge the propriety of [agency]

action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947). Thus, the Court cannot undertake the step-two analysis on its own, and Defendants harmless error argument fails because USCIS did not base its decision on findings from the step-two analysis.

### C. The Court Affirms UCSIC's Decision Because its Determination Under Six of the Eight O-1A Criteria Are Not Arbitrary, Capricious, or Contrary to Law

With those points in mind, the Court turns to the parties' main dispute: whether USCIS's decision reflects its findings based on the evidence submitted or an "overlaying [of] extra regulatory benchmarks" not required by the plain language of the eight O-1A criteria.

#### 1. Receipt of Nationally or Internationally Recognized Prizes or Awards for Excellence in the Field of Endeavor

As evidence of the first O-1A criterion, Plaintiffs submitted Mr. Faus's February 2025 award from "Global Recognition Awards," as well as various articles covering the reach of Global Recognition Awards. CAR 614–44. In response to the RFE, Plaintiffs continued to rely solely on this award, and submitted additional evidence as to its reach and credibility. USCIS rejected this evidence for several reasons, explaining that (1) the award did not appear credible, because applicants could "fill out an application form for the award with minimum information"; (2) the award offered "a digital certificate" and "an online write-up about you and your Global Recognition Award" if the applicant paid a fee, meaning it was likely not "prestigious" as "nationally or internationally recognized awards do not regularly charge for upgrades or benefits"; (3) it was not covered in "major media" apart from one article in *Forbes Israel* that was "paid content which was written by the Global Recognition Awards to gain publicity," and so did not count; and (4) Plaintiffs "did not provide information on the criteria and evaluations to receive this award," casting "doubt upon the objectivity of the award process and how it provides an award for excellence in the beneficiary's field." CAR 4–5.

Plaintiffs argue that in rejecting their evidence of the first criterion, USCIS grafted on

additional requirements—"a minimum global reputation," an "invite-only nominee" process, and, generally, a certain level or "prestige"—ignoring that Mr. Faus's award allegedly and technically meets all the requirements of the criterion. *See* ECF No. 27-1 at 10. Plaintiffs are correct in some respects, and incorrect in others; but overall the Court does not disturb USCIS's decision on this ground.

First, Plaintiffs are correct that, to the extent USCIS required a certain level of "prestige" or exclusivity, it erred. The first criterion mentions nothing of prestige, only of national or international recognition. 8 C.F.R. § 214.2(o)(3)(iii)(B)(1). To be sure, prestige and exclusive, invite-only nominations could indicate national or international recognition; but they are not required by the plain language of the first criterion. Indeed, this requirement contrasts with the other evidentiary option (8 C.F.R. § 214.2(o)(3)(iii)(A)), which requires evidence of a "a major, internationally recognized award, such as the Nobel Prize." If the award under the (B)(1) criterion must also be major and prestigious, it would appear that criteria B(2)–(8) are always (or at least, often) redundant. Similarly, nothing about an award "charg[ing] for upgrades or benefits" of publicity undermines a freely-competitive award itself. *Contra* CAR 4.

But to the extent USCIS made this error, it was harmless because USCIS also determined that the Global Recognition Awards were not nationally or internationally recognized, because the examples of national media Plaintiffs submitted were all media paid for by Global Recognition Awards itself. CAR 4–5. If the only national or international articles about Global Recognition Awards are paid for by the award organization itself, USCIS reasons, then it is not "nationally or internationally recognized" by others in the field of endeavor. *See id.* The Court agrees – this is not an extra-textual requirement, but rather USCIS engaging in a credibility determination about whether the recognition Plaintiffs proffer is genuine. Thus, while Mr. Faus does appear to have received a "prize or award for excellence in the field of endeavor" (hospitality), Plaintiffs did demonstrate to USCIS or this Court that the award had genuine national or international recognition.

Accordingly, the Court does not disturb USCIS's finding on this criterion.

**2. Membership in Associations in the Field**

Plaintiffs did not claim to meet this criterion before USCIS, and do not challenge USCIS's decision under this criterion, so the Court does not address it.

**3. Published Material in Professional or Major Trade Publications or Major Media About the Alien, Relating to the Alien's Work in the Field**

As evidence of the third O-1A criterion, Plaintiffs submitted three articles about Mr. Faus, published in *Resident Magazine*, *Naluda Magazine*, and *Small Business Sense*, as well as certain analytics for these magazines. CAR 645–703. In response to the RFE, Plaintiffs submitted additional statistics about these magazines' readership, as well as a fourth article about Mr. Faus published in *Haute & Her*. CAR 239–98. USCIS rejected this evidence because, although the articles were about Mr. Faus and included the requisite title, date, and author of the publication, they were not "major" as required by the regulation.[6] CAR 5–6.

Specifically, USCIS initially took issue with Plaintiffs' evidence because they did not "submit documentation on the viewership statistics for the various media sources," but acknowledged that Plaintiffs did so in response to the RFE. *See* CAR 6. After the RFE, USCIS compared the numbers provided by Plaintiffs to the readership of "*Conde Nast Traveler* (3.7M monthly visits) and *Travel and Leisure* (15.3M monthly visits)," and found Plaintiffs' proffered publications not to be "major." CAR 6. Plaintiffs' magazines have monthly viewerships of: 65,300 (*Resident Magazine* (CAR 242)), 9,500 (*Naluda Magazine*, (CAR 261)), and 257,000 (*Small Business Sense*, (CAR 271)); Plaintiffs did not submit statistics for *Haute & Her*. Plaintiffs argue that these publications were major, and that USCIS actually "smuggled" step two "into step one" by requiring the publications to be *so* major that they would "propel the beneficiary to sustained acclaim in his field." ECF No. 34 at 13–14; CAR 6. The Court disagrees.

USCIS did not err as a matter of principle in comparing the viewership of Plaintiffs' magazines to known, major media in the field. USCIS explicitly did not, for example, compare

---

[6] USCIS also took issue with "the credibility of these articles and the purpose of their publication," but stopped short of calling them fraudulent or finding that they were not *bona fide* articles about Mr. Faus. *See* CAR 5–6. Defendants do not defend this rationale, but rely instead on USCIS's "major media about the beneficiary" determination. ECF No. 32 at 17.

Plaintiffs' magazines to "mass-market mainstream media such as *The New York Times* or *CNN*." CAR 6. This is a proper weighing of evidence; it does not heighten, but rather faithfully applies, the requirement of the third criterion that "trade publications" or "media" be "major." While USCIS's comment that the media is not the sort that could "propel" Mr. Faus "to sustained acclaim in his field" is out-of-place and appears to go to the step-two analysis, which is improper at the first phase, it does not change the outcome. Rather, the viewership of *Resident Magazine* and *Naluda Magazine* clearly show they are not "major" publications. *Small Business Sense* is a closer call with a quarter-million monthly visitors. CAR 271. But while this Court might have made a different judgment, USCIS's determination that such a publication is not "major" in the hospitality industry is not so implausible or unsupported as to rise to the level of arbitrary and capricious. Absent a lack of evidence or evidence that "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise," this Court will not substitute its judgment for that of the agency. *See, e.g.*, *Friends of Santa Clara River v. U.S. Army Corps of Eng'rs*, 887 F.3d 906, 920–21 (9th Cir. 2018).

Accordingly, the Court does not disturb USCIS's finding on the third criterion.

#### 4. Participation on a Panel, or Individually, as a Judge of the Work of Others in the Same or in an Allied Field of Specialization

For evidence of the fourth O-1A criterion, Plaintiffs submitted evidence that in 2025, Mr. Faus served as a judge for the Global Recognition Awards. CAR 704–44. Specifically, Mr. Faus served as a judge in the field of "sustainability & environmental innovation" in luxury hospitality, judging a shortlist of 20 nominees. *See* CAR 705, 708–09, 735–36. USCIS rejected this evidence for two relevant[7] reasons: (1) USCIS doubted the credibility of Mr. Faus's "position as a judge for this awards program" because he applied to be a judge rather than being invited, and because Global Recognition Awards "appears to allow individuals to pay" for a write-up of their judge's

[7] USCIS also reiterated its "doubts [as] to the credibility of the Global Recognition Awards" generally, and concluded that this doubt impacted its "[]evaluation the reliability and sufficiency of the remaining evidence offered in support of the visa petition." CAR 7. But these doubts were as to the genuineness of the award, not the judging panel, and do not appear to directly impact USCIS's conclusion. *See id.* Indeed, Defendants do not defend this rationale as sufficient in their brief. ECF No. 32 at 17.

profile, (CAR 7); and (2) the record did not show that Mr. Faus judged individuals "in the same or allied field of specialization of the beneficiary" (CAR 7–8). Defendants defend only the latter rationale. ECF No. 32 at 17. The Court addresses both and finds that, on this criterion, USCIS's decision was contrary to law.

First, there is nothing in the regulation as to the fourth criterion that requires judges to be appointed or invited. USCIS did not explain why applying to be a judge is disqualifying or indicates a lack of credibility of the panel. CAR 7. Defendants stop short of defending USCIS's rationale on this ground, and the Court sees no textual reason to disallow an entire category of panels and awards where judges apply and are selected from among the applicants. The record evidence before the Court appears to support that Mr. Faus served as a judge on this panel, and in fact judged a shortlist of 20 nominees, "assess[ing] each applicant's performance against the selection criteria specific to their category to identify the most outstanding companies and/or individuals in each category." CAR 735.

Second, USCIS seems to have overlooked that a judge may sit on a panel evaluating work "in the same ***or in an allied field*** of specialization." 8 C.F.R. § 214.2(o)(3)(iii)(B)(4) (emphasis added). Although USCIS conclusorily recites the latter part of the disjunctive requirement, its analysis focused on questioning whether "sustainability & environmental innovation" is ***the same*** as Mr. Faus's "work in luxury hospitality." CAR 7–8. The failure to substantively address the second option under the regulation is contrary to law. And to the extent Defendants argue that USCIS did address it, the Court agrees with Plaintiffs that USCIS's reading of an "allied field" was too stringent. Specifically, considering Global Recognition Awards' Chairwoman's letter, it appears that the panel on which Mr. Faus participated was concerned with sustainability and environmental innovation in the context of luxury hospitality. CAR 735. And Mr. Faus's scholarly articles, discussed in relation to the sixth criterion, below, were accepted by USCIS as "scholarly articles in the field" (and found deficient for other reasons). CAR 8–9. One of these articles related to "Sustainability in the Hospitality Sector" in Greece, showing how the fields overlap and can be allied. *See* ECF No. 34 at 12–13; CAR 745–840

Because USCIS's rationale under this criterion appears to be based on readings of the

regulation not supported by its plain meaning, its decision on this criterion was contrary to law and must be reversed.

**5. Original Scientific, Scholarly, or Business-related Contributions of Major Significance in the Field**

Plaintiffs did not claim to meet this criterion before USCIS, and do not challenge USCIS's decision under this criterion, so the Court does not address it.

**6. Authorship of Scholarly Articles in the Field, in Professional Journals, or Other Major Media**

As to the sixth criterion, Plaintiffs submitted four proposed scholarly articles authored by Mr. Faus. CAR 745–840. USCIS appears to have accepted all four as scholarly. *Cf.* CAR 8 ("While these documents appeared to be scholarly, you did not include evidence that they were published in professional journals in the beneficiary's field.").[8] The Court assumes for purposes of this Order that all four articles are scholarly. But USCIS rejected Plaintiffs' evidence under this criterion because two of Plaintiffs' articles were unpublished academic theses; one was accepted for publication in *Revista FT*, but Plaintiffs' original submission did not confirm it was actually published; and one was published in *Brainz Magazine*. Plaintiffs' response to the RFE included evidence that the *Revista* article was published in July 2025.

Beginning with the *Revista* article, Plaintiffs were required to establish eligibility at the time of filing of their application. ECF No. 32 at 18 (citing *Matter of Michelin Tire Corp*., 17 I. & N. Dec. 248 (Comm. 1978)). Plaintiffs filed the O-1A application on July 28, 2025. CAR 487–505. Plaintiffs submitted evidence that the *Revista* article was published in July of 2025, but not the day it was published, meaning Plaintiff had not shown it was published prior to July 28. CAR 312. While USCIS could have issued a second RFE, it is not clear why Plaintiffs failed to provide the day the article was published, and the burden to show eligibility is ultimately on the applicants. *See* CAR 10 ("In visa petition proceedings, the petitioner bears the burden of establishing

---

[8] Although this statement was made in the context of Faus's unpublished academic writings, USCIS never rejected his other article, published in *Brainz Magazine*, as non-scholarly. CAR 8–9.

eligibility for the benefits sought. *Matter of Brantigan*, 11 I&N Dec. 493 (BIA 1966)"). Plaintiffs' failure to submit a date certain on which the *Revista* article was published, after being given the opportunity to do so in the RFE, does not make USCIS's decision arbitrary or capricious.

As to the *Brainz Magazine* article, Plaintiffs complain that USCIS improperly declined to find *Brainz Magazine* to be a professional journal. ECF No. 27-1 at 17–18.[9] But USCIS found that *Brainz Magazine* was "a global digital magazine focusing on exclusive interviews, articles and information on entrepreneurship, personal development, leadership and lifestyle," with a "mission [] to advocate for people's happiness and success by providing consumers with content that inspires, motivates and provides the answers they seek [and a] vision [] to provide the best and most inspiring content in the world." CAR 8. While *Brainz Magazine* may be a reputable publication, what it is not is a "professional journal" in the field of hospitality.[10]

Accordingly, the Court does not disturb USCIS's finding on the sixth criterion.

**7. Employment in a Critical or Essential Capacity for Organizations and Establishments that have a Distinguished Reputation**

To satisfy this criterion, Plaintiffs rely on Mr. Faus's role as "Food & Beverage Manager" at Baraza Resort & Spa in Zanzibar, Tanzania; "Floor Manager" at a Teleferic Barcelona location in California; and "Assistant Director of Food & Beverage" at the Mandarin Oriental hotel in Barcelona, Spain. *See* CAR 9. USCIS rejected Plaintiffs' evidence both as failing to show that Mr. Faus's roles were "critical or essential," and as failing to show that these establishments have a distinguished reputation. *Id.* The Court agrees with USCIS on the first ground.

USCIS explained that Plaintiffs failed to show that Mr. Faus's roles at Mandarin Oriental,

---

[9] Plaintiffs do not appear to dispute that *Brainz Magazine* is not a "major media" publication.

[10] Plaintiffs' motion complains that USCIS did not correctly interpret the meaning of "professional journal," but Plaintiffs do not explain what was wrong with USCIS's implicit interpretation that the journal must be one "in the beneficiary's field." CAR 9. Rather, Plaintiffs complain that USCIS imposed a "'sufficient details' sub-test untethered to the regulation." ECF No. 27-1 at 18. Plaintiffs are incorrect. USCIS's requirement that Plaintiffs provide "sufficient details" as to the nature of *Brainz Magazine* as a publication are not extra-textual requirements, but merely an application of the fact that, again, it is Plaintiffs' burden to provide evidence as to each part of the criterion – including that *Brainz Magazine* is a professional journal in the field of hospitality.

Baraza Resort & Spa, and Teleferic Barcelona were "critical or essential." CAR 9. In doing so, USCIS explained that the question was whether Mr. Faus's roles were "critical or essential for the organization as a whole," and Mr. Faus had not provided sufficient evidence to show that they were. The evidence provided by Mr. Faus shows that he was, generally, in middle-to-upper management; for example, he was the Floor Manager of the Los Gatos, California location for Teleferic Barcelona. While such roles are "essential" in the sense of necessary to running a particular office or franchise, they are not essential to the organizations as a whole, as the seventh criterion requires. *See* 8 C.F.R. § 214.2(o)(3)(iii)(B)(7) (". . . a critical or essential capacity for organizations and establishments . . . ."). Plaintiffs' primary argument to the contrary, also made before USCIS, is that in the E-2 visa context, the government previously determined that Mr. Faus's role as Floor Manager was "executive/supervisory or essential" in the E-2 visa context. CAR 115–17. But the Court does not agree that USCIS' decision in the E-2 context necessarily carries over to the O-1A context: for example, USCIS may have admitted Plaintiff because his role was "executive/supervisory" in nature, not essential; an O-1A visa requires more – it requires extraordinary ability, and thus a "critical or essential" role in prior organizations.

The Court does not disturb USCIS's finding on the seventh criterion.

**8. Evidence that Mr. Faus has Either Commanded a High Salary or Will Command a High Salary**

Finally, as to the eighth criterion, Plaintiffs submitted evidence that Mr. Faus's salary was above average for "Food & Beverage" or "Floor Managers" while working in Zanzibar and California. CAR 841–930. USCIS explained in its RFE that, because Mr. Faus was to be hired as a COO for FSH, the proper comparative roles to determine whether a salary was "high" were CEO roles. *Cf.* CAR 10. In response, Plaintiffs submitted an article about the difference between CEO and COO roles, (CAR 465–79), and USCIS amended its analysis to compare to COO roles, (CAR 10–11).

Plaintiffs' complaint here is that USCIS's requirement of "job-title comparability" does not exist in the regulation. ECF No. 27-1 at 22. Plaintiffs argue that the proper comparison is "in relation to others in the field," not in relation to the position Mr. Faus is seeking. *Id.* Here,

Defendants agree that the issue is one of the text's interpretation, but argue that the "commanded high salary [must] be related to the position a petitioner is seeking an O-1A visa for." ECF No. 32 at 19. They argue this is so because, in light of "Congress's intent when viewed in context with the other seven regulatory requirements[,] . . . [i]t would be unreasonable to think," for example, "that a former actor who previously commanded a multi-million-dollar salary for their roles would qualify [for] an O1-A [sic] visa in the field of chemistry." *Id.* But this example proves Plaintiffs' point: under the regulation, salary should be compared to others in the same field as opposed to different fields, not a specific job title as opposed to another. To complete the government's example, if a brilliant chemistry professor commanded a high salary compared to other chemistry professors and, due to her extraordinary ability, was offered a role as a lead chemist in a private lab, would she be ineligible simply because her prior professorial salary was lower than other lead chemist salaries? That does not appear to be the regulation's intent, as all the other criteria focus on comparisons to "the field of endeavor," not to particular job titles.

In other words, Mr. Faus's COO salary with FSH could perhaps be compared to other COO salaries; but USCIS erred in refusing to compare Mr. Faus's proffered salaries in the field of hospitality management (as Assistant Director of Food & Beverage, Food & Beverage Manager, and Floor Manager) to similar roles in the same industry. The Court expresses no opinion on whether, in fact, Mr. Faus's prior salaries were high; but it reverses USCIS's judgment on this factor for consideration by USCIS in the first instance.

* * *

An O-1A visa requires, at the threshold step, that Mr. Faus meet at least three of the eight regulatory criteria. While USCIS may have erred on two (the fourth and eight criteria), that still leaves Mr. Faus at least one criterion short. The result is that any error by USCIS is harmless, and the Court AFFIRMS the decision.

/ / /

/ / /

/ / /

/ / /

United States District Court
Northern District of California

## IV. CONCLUSION

Defendants' motion for summary judgment is GRANTED, Plaintiffs' motion is DENIED, and the decision of USCIS is AFFIRMED.

**IT IS SO ORDERED.**

Dated: November 3, 2026

Noël Wise
United States District Judge